# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 7, 2024         Decided June 3, 2025

No. 24-1058

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

INDUSTRIAL TURNAROUND CORPORATION AND FEDERAL
MINE SAFETY AND HEALTH REVIEW COMMISSION,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

———

*Edward V. Hartman*, Senior Trial Attorney, U.S.
Department of Labor, argued the cause for petitioner. With him
on the briefs was *Emily Toler Scott*, Counsel for Appellate
Litigation.

*Adrianne Chillemi* argued the cause for respondents. With
her on the brief were *Allen L. West* and *Roger M. Stevens*.
*Thaddeus J. Riley* entered an appearance.

Before: RAO and PAN, *Circuit Judges*, and GINSBURG,
*Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: In August 2022, a bin full of phosphate rock collapsed on three miners, who were severely injured. Industrial TurnAround Corporation (ITAC) was the independent contractor tasked with checking the structural integrity of the support columns for the bin. The Mine Safety and Health Administration (MSHA) sent a notice of a proposed penalty to the address of record for ITAC, alleging a failure to take defective equipment out of service as required by 30 C.F.R. § 56.14100(c). As ITAC did not contest the penalty, it became final 30 days later. Shortly thereafter, ITAC filed a motion with the Federal Mine Safety and Health Review Commission to reopen the penalty on the ground that ITAC had inadvertently failed to update its address of record, which motion the Commission granted. The MSHA now petitions for review of that order, arguing the Commission abused its discretion by reopening the penalty. We hold the Commission's order is not an appealable collateral order and therefore dismiss the Secretary's petition for lack of jurisdiction.

## I.  Background

This petition involves the reviewability of a nonfinal order under the collateral order doctrine. We begin with background regarding the MSHA penalty scheme and the facts of this case.

## A.  Legal Background

The Mine Safety and Health Act (hereinafter the Act) authorizes MSHA inspectors to issue citations to mine operators and their independent contractors for a violation of an applicable safety or health standard. 30 U.S.C. § 814(a); *id.*

§ 802(d) (defining "operator" to include an independent contractor). After an inspector issues a citation, the Secretary calculates a proposed penalty and "notif[ies] the operator by certified mail of the civil penalty proposed to be assessed." 30 U.S.C. § 815(a); 30 C.F.R. § 100.7(a). Service of that notice is deemed "completed upon delivery . . . or mailing to the independent contractor's address of record" on file with the agency. 30 C.F.R. § 45.5. The Act requires every operator of a mine subject to the Act to maintain a current address with the agency. 30 U.S.C. § 819(d).

A proposed penalty becomes final "and not subject to review by any court or agency" 30 days after it was served on the operator unless the operator first notifies the Secretary that it intends to contest the penalty. 30 U.S.C § 815(a); 30 C.F.R. § 100.7(c). The Commission has asserted, however, that it has "jurisdiction to reopen uncontested assessments that have become final Commission orders" under § 815(a). *ITAC*, 46 FMSHRC 80 (2024) (citing *Jim Walter Res., Inc.*, 15 FMSHRC 782, 786–89 (1993)) (dictum). In deciding whether to reopen a penalty assessment, the Commission is guided, "so far as practicable," *id.* (citing 29 C.F.R. § 2700.1(b)), by Federal Rule of Civil Procedure (FRCP) 60(b), which allows for relief from a final order because of "mistake, inadvertence, surprise, or excusable neglect."

## B.    Factual Background

On August 22, 2022 three miners were injured by the collapse of a bin full of phosphate rock at the Lee Creek Mine in Beaufort, North Carolina. On September 27, 2022 the MSHA issued a citation to ITAC, the independent contractor responsible for the structural safety of the bin. On March 30, 2023, the MSHA sent a notice of proposed penalty in the amount of $33,983 to ITAC's address of record, which was 14

years out of date. That notice was delivered on April 3, 2023, accepted by an unknown person, and became final 30 days later because ITAC did not respond to it.

On June 5, 2023 ITAC filed a motion with the Commission to reopen the penalty determination. Invoking the justifications set out in FRCP 60(b), ITAC said its failure to contest the penalty was the result of "excusable neglect, mistake or inadvertence," not of "indifference, inattention, inadequate or unreliable office procedures or general carelessness." ITAC explained that it had not occupied the address to which the MSHA sent the notice of proposed penalty since 2009 and that it had discovered the MSHA notice only on May 25, 2023, when one of its employees went to the address to check for missing packages. Shortly thereafter, ITAC's counsel called the MSHA to inquire about the penalty and was told the penalty was final because it had not been contested within the 30-day statutory limit.

The Secretary of Labor, representing the MSHA, opposed ITAC's motion. The Secretary argued the MSHA properly mailed the notice of proposed penalty to ITAC's address of record, and ITAC's failure to pick up the notice could not be excused under the standards of FRCP 60(b).

The Commission granted ITAC's motion to reopen on February 16, 2024 and remanded the matter to an administrative law judge for further proceedings. The Commission held ITAC's failure to respond was an excusable mistake for two reasons: (a) "the recipient of [the] delivery is unclear" because ITAC cannot identify who signed for the package, and (b) "it appears that ITAC may not have been aware that its former address was listed as its address of record . . . since ITAC has received only two citations since 2009, including the citation at issue."

Commissioner Baker dissented, noting that the Commission has denied prior motions to reopen a final penalty based upon an operator's failure to maintain a correct address of record. Indeed, he continued, ITAC's explanation of its failure "is itself an independent violation of the Mine Act that could have been cited." The Secretary then petitioned this court for review of the reopening order.

## II. Analysis

The Secretary recognizes, of course, that ordinarily "appellate review of administrative action is restricted to final agency orders." *Meredith v. Fed. Mine Safety & Health Rev. Comm'n*, 177 F.3d 1042, 1047 (D.C. Cir. 1999). "An order will be considered final to the extent that it imposes an obligation, denies a right, or fixes some legal relationship, usually at the consummation of an administrative process." *Id.* at 1047 (cleaned up). The Supreme Court, however, has long held "the circuit courts have jurisdiction to hear appeals from a limited category of decisions that fall within the bounds of the so-called collateral order doctrine," *id.* at 1048, identified with *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). That doctrine "accommodates a small class of rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (cleaned up).

The Secretary concedes, as she must, that the Commission's order is not a final agency action. The order merely remanded the matter for further proceedings. *Meredith*, 177 F.3d at 1047 (finding a Commission order remanding proceedings to an administrative law judge "outside the heartland of final action"). It did not "impose an obligation, deny a right, or fix some legal relationship[.]" *Id.* (cleaned up).

The Secretary argues instead that the collateral order doctrine applies.

The collateral order doctrine provides that an agency order qualifies for interlocutory review if it: "[1] conclusively determines the disputed question, [2] resolves an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (cleaned up). The Supreme Court has recognized that both the second and, "[m]ore significantly," the third factor incorporate a requirement to provide a "justification for immediate appeal" that is "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). At base, "the decisive consideration" in this inquiry "is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Id.* (cleaned up) (referring to *Will*, 546 U.S. at 352–53). Moreover, courts must avoid an expansive understanding of the collateral order doctrine, as it "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Id.* at 106 (cleaned up); *accord O'Connell v. U.S. Conf. of Cath. Bishops*, 134 F.4th 1243, 1253 (D.C. Cir. 2025).

We agree with ITAC that the Commission's order, although "completely separate from the merits" of the case before the Commission, is not sufficiently important to merit review at this stage of the proceedings. Accordingly, "we do not decide whether the other *Cohen* requirements are met." *Mohawk Indus.,* 558 U.S. at 108 (concluding the collateral order doctrine did not apply based upon the third *Cohen* factor without considering the other factors); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 748 (D.C. Cir. 2016)

(addressing only the third factor because it "alone precludes finding" the collateral order doctrine satisfied).

The Secretary argues that collateral review of an order granting a motion to reopen does indeed involve an important issue because interlocutory review would allow the court to ensure that a final MSHA penalty remains final. In the Secretary's view, allowing the Commission "to abuse its discretion and reopen final orders at its whim, without regard to facts and reason," undermines the "enforcement mechanism" of the Act. In other words, the order implicates "the Secretary's statutory right to have final orders remain final orders," which enables penalties to deter violations. The Secretary argues also that the Commission's decision to reopen an operator's penalty implicates "its duty to make reasoned decisions on cases involving an important statutory right," an issue that previously has come before this court in final orders involving a motion to reopen a final penalty assessment. *See Sec'y of Lab. v. Westfall Aggregate & Materials, Inc.*, 69 F.4th 902, 911–14 (2023); *Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161, 1164 (2013).

A review of the Supreme Court's decisions regarding the reviewability of collateral orders clarifies the types of interests substantial enough to qualify as a "particular value of a high order." *Will*, 546 U.S. at 352–53. For example, the Supreme Court has granted collateral review of decisions involving absolute and qualified immunity, *e.g.*, *id.* at 350 (citing *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)), a state's immunity pursuant to the Eleventh Amendment to the Constitution, *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993), and a criminal defendant's immunity pursuant to the Double Jeopardy Clause of the Fifth Amendment, *see Abney v. United States*, 431 U.S.

8

651, 660–62 (1977). Deferred review of those cases would have "imperil[ed] a substantial public interest," respectively, "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Will*, 546 U.S. at 352–53.

With regard to the MSHA itself, this court has reviewed a collateral order granting a request temporarily to reinstate an employee to his position because deferred review would cause significant and irreparable financial harm to both the employer and the employee, could chill "a miner's willingness to report safety complaints," and could effectively eliminate "any opportunity for a judicial hearing of [the miner's] claims." *CalPortland Co., Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 839 F.3d 1153, 1161 (D.C. Cir. 2016) (cleaned up). This court has also granted collateral review of an order subjecting individual MSHA employees to a discrimination suit because "the consequences of unwarranted litigation [were] analogous" to those when considering denials of qualified immunity and because the question at issue "would only have to [be] answer[ed] once." *Meredith*, 177 F.3d 1048–52.

The Commission's order in this case is unlike the orders at issue in those cases. The need for expedited review is not equivalent to that in *CalPortland* because, rather than resulting in irreversible financial harm, the order here merely delays the payment of a potential penalty to the Government while the proceedings on the merits of the case go forward. Nor is the order akin to that in *Meredith* because reviewing the motion to reopen here would resolve this case only to open the door to untold others, each to be resolved on its unique facts.

The Secretary analogizes the Commission's order to remand orders for which other circuits have granted interlocutory review, but doing so merely highlights the relative unimportance of the order in this case. The Secretary's cases all involved the extent to which an adjudicatory body could review an enforcement agency's exercise of prosecutorial discretion either to withdraw or to settle an enforcement action. *See Marshall v. Occupational Safety & Health Rev. Comm'n*, 635 F.2d 544, 548–549 (6th Cir. 1980) (review of Occupational Safety and Health Review Commission's (OSHRC) decision to allow private parties to prosecute a citation the Secretary had withdrawn); *Marshall v. Oil, Chem. & Atomic Workers Int'l Union*, 647 F.2d 383, 387 (3d Cir. 1981) (review of OSHRC's refusal to approve a settlement agreement into which the Secretary had entered); *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 923–24 (2d Cir. 1983) (same). Each implicated the separation of powers, which the Court in *Will* held worthy of immediate review. 546 U.S. at 352. The Commission's order here involves no such constitutional value but only the arguably arbitrary reopening of a proposed penalty that had automatically become final for want of notice that the operator intended to contest the penalty, as required by 30 U.S.C § 815(a).

The Commission's order is more closely analogous to the order for which the Supreme Court rejected immediate review in *Will*. The district court had denied a motion to dismiss in which the defendant argued the action was barred under the Federal Tort Claims Act. *Id.* at 348. After analyzing its prior cases approving collateral review, the Court held this decision did not involve any weighty public interest of the sort underlying the collateral order doctrine. Unlike a denial of qualified immunity — for which collateral review is "essential" because "the nub of qualified immunity is the need

to induce officials to show reasonable initiative when the relevant law is not clearly established" — the interest affected by the district court's decision was "the avoidance of litigation for its own sake[.]" *Id.* at 353 (cleaned up).

So, too, here. If an operator files a timely challenge to a notice of penalty, the Commission is required by statute to "afford [it] an opportunity for a hearing." 30 U.S.C. § 815(d). Assuming a final penalty may be reopened, Commission precedent requires it to determine whether the operator meets one of the requirements in FRCP 60(b) for relief from a final order, to wit, "mistake, inadvertence, surprise, or excusable neglect." *See, e.g.*, *Commonwealth Mining, LLC*, 42 FMSHRC 866 (2020). Nevertheless, the Secretary seeks to expedite appellate review of that determination when she views as "unwarranted" a particular Commission decision to reopen a proceeding after a penalty has become final. In other instances, the Secretary does not oppose the reopening of a penalty proceeding because she agrees the operator that has filed the motion to reopen satisfies the requirements of Rule 60(b). *See, e.g., id.* at 867; *Hoover Excavating, Inc.*, 35 FMSHRC 317, 318 (2013). Hence, we see the Secretary's interest in seeking expedited review of a decision to reopen a penalty proceeding, which reflects her evaluation of the Commission's reasoning, is precisely "the avoidance of litigation for its own sake." *Will*, 546 U.S. at 353; *see also Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) ("If the expense of litigation were a sufficient reason for granting an exception to the final judgment rule, the exception might well swallow the rule" (cleaned up)); *O'Connell*, 134 F.4th at 1256–57.

The Secretary's separate interest in ensuring that the Commission "make reasoned decisions on cases involving an important statutory right" is similarly unavailing. Although we have emphasized — and continue to require — that the

Commission either abide by or distinguish its own precedents, *see Westfall Aggregate*, 69 F.4th at 912–14 and *Lone Mountain Processing*, 709 F.3d at 1163–64, the Secretary provides no reason for treating her interest in reasoned decisionmaking as a "substantial public interest or some particular value of a high order" that justifies collateral review. *Mohawk Indus.*, 558 U.S. at 107 (cleaned up). In fact, granting collateral review of every decision that "involv[es] an important statutory right" would fundamentally contravene the limiting principles that allow immediate review of only a "narrow and selective" group of collateral orders. *Will*, 546 U.S. at 350.

## III. Postlude

Whether the Commission is ever authorized to reopen a final penalty assessment is not at all clear. As we saw, § 815(a) of the Act provides that an uncontested penalty assessment "shall be deemed a final order of the Commission and not subject to review by any court or agency" 30 days after it is served on an operator. The Commission has asserted authority to reopen final penalty assessments at least since 1993. *Jim Walter Res.*, 15 FMSHRC 782 (dictum). We have reviewed final judgments in reopened penalty cases on at least two occasions. In no case, however, has the Commission's reopening authority been challenged and therefore we have neither analyzed nor endorsed the Commission's reading of the statute. *See Westfall Aggregate*, 69 F.4th at 908; *Lone Mountain Processing*, 709 F.3d at 1163; *see also Gersman v. Grp. Health Ass'n, Inc.*, 975 F.2d 886, 897 (D.C. Cir. 1992) ("Binding circuit law comes only from the holdings of a prior panel"). The same is true of other Circuits.[*]

---

[*] *See Noranda Alumina, L.L.C. v. Perez*, 841 F.3d 661, 666–69 (5th Cir. 2016) (holding the Commission abused its discretion by denying

We have no occasion today, however, to decide this open question under the Act because the Secretary has not raised it. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (explaining that "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

## IV. Conclusion

For the foregoing reasons, the petition for review is

*Dismissed.*

---

an operator's motion to reopen); *Raw Coal Min. Co. v. Sec'y of Lab.*, 553 F. App'x 340 (4th Cir. 2014) (holding petitioner forfeited its argument, which was that the Commission abused its discretion by denying an operator's motion to reopen). Other circuits are divided, however, over a parallel issue with regard to the reopening by the OSHRC of citations issued by the Occupational Safety and Health Administration. As in the Act, the Occupational Safety and Health Act provides that after notice and a period in which to contest a citation or penalty, it "shall be deemed a final order of the Commission and not subject to review by any court or agency." 29 U.S.C. § 659(a). The Third Circuit has held nonetheless that the OSHRC may reopen a final citation or penalty that meets one of the conditions in FRCP 60(b), *George Harms Const. Co. v. Chao*, 371 F.3d 156, 160–63 (3d Cir. 2004), while the Second Circuit has reached the opposite conclusion, *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 (2d Cir. 2002).